

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-22-1998

# Koppers Co Inc v. Aetna Cslty & Surety

Precedential or Non-Precedential:

Docket 97-3432

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Koppers Co Inc v. Aetna Cslty & Surety" (1998). *1998 Decisions.* Paper 167.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/167

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 22, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-3432

KOPPERS COMPANY, INC.,

     Appellant

v.

THE AETNA CASUALTY AND SURETY COMPANY; ZURICH
INSURANCE COMPANY; THE TRAVELERS INDEMNITY
CO.; THE AMERICAN HOME ASSURANCE COMPANY;
COMMERCIAL UNION INSURANCE COMPANY; THE
HOME INSURANCE COMPANY; UNDERWRITERS AT
LLOYD'S OF LONDON

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 85-cv-02136)

Argued, Monday, April 27, 1998

BEFORE: ALITO, RENDELL and GARTH, Circuit Judges

(OPINION FILED AS A NOT-FOR-PUBLICATION
OPINION ON JULY 22, 1998)

       Joseph W. Montgomery, III (Argued)
       Jones, Day, Reavis & Pogue
       500 Grant Street - 31st Floor
       Pittsburgh, PA 15219

       Attorneys for Appellant

Hershel J. Richman
Jennifer R. Clarke
Fred H. Nemeth
Dechert, Price & Rhoads
1717 Arch Street
4000 Bell Atlantic Tower
Philadelphia, PA 19103

Peter M. Page
Kathleen A. McQueeny
Brian D. Bossert
Blatt, Hammesfahr & Eaton
333 West Wacker Drive, Suite 1900
Chicago, IL 60606

Martin R. Baach
Bruce R. Grace (Argued)
Duane K. Thompson
Baach, Robinson & Lewis
One Thomas Circle, Suite 200
Washington, DC 20005-5803

Attorneys for Appellee,
Underwriters at Lloyd's of London

OPINION OF THE COURT

GARTH, Circuit Judge.

The issue we must decide in this appeal is whether an excess insurer (here, INA) was an indispensable party under Rule 19(b) of the Federal Rules of Civil Procedure so as to cause the dismissal of certain of the Appellant's claims when INA was not joined in this action against various other excess insurers. We hold that INA was not an indispensable party and accordingly that the claims should not have been dismissed. We therefore reverse.

I.

Appellant Koppers Company, Inc. ("Koppers") appeals the district court's dismissal of its claims against Appellees, certain underwriters from Lloyd's of London and certain

London market insurance companies (hereinafter, "the London Insurers"), pertaining to seven (7) insurance policies that the London Insurers issued to Koppers to provide coverage for various environmental property damages that occurred from 1960–65 (hereinafter, "the 1960–65 policies"). The district court dismissed the claims relating to these policies because Koppers failed to join two other insurers -- Indemnity Insurance of North America and Insurance Company of North America (collectively, "INA") -- as indispensable parties pursuant to Rule 19(b) of the Federal Rules of Civil Procedure.

II.

As we have set forth the facts of the underlying dispute in an earlier opinion, see Koppers Co., Inc. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1444 (3d Cir. 1996), we recite only the facts pertinent to the issues before us here.

Koppers is a large manufacturing company based in Pittsburgh, Pennsylvania. In the 1980s, federal and state agencies brought claims against Koppers based on environmental contamination at approximately 150 plant and disposal sites. Although Koppers had purchased insurance from several insurance companies, all of the insurers initially denied coverage for these claims when Koppers sought indemnification. Accordingly, in 1985, Koppers sued its two (2) primary comprehensive insurers for breach of contract in federal court, based upon diversity of citizenship.

In 1988, Koppers amended its complaint to sue other primary insurers and several excess insurers. Excess insurers -- such as the London Insurers in this case -- are insurers who contract to provide coverage only when the amount of the claim is beyond that of a primary insurer. In amending its complaint, however, Koppers decided not to sue INA (an excess insurer) because INA is a Pennsylvania company and joining it to the instant action would have defeated complete diversity. Thus, instead of suing INA in a

3

federal forum, Koppers initiated suit in Pennsylvania state court over the same insurance claims.1

In July 1994, the London Insurers filed a Motion to Dismiss claims pertaining to the 1960-65 policies because Koppers failed to join INA pursuant to Rule 19 of the Federal Rules of Civil Procedure. The London Insurers claimed that the relationship between the coverage that they provided and the coverage that INA provided concerning the 1960-65 policies made INA an indispensable party to the federal suit.

On October 20, 1994, without comment, the district court granted the London Insurers' Motion to Dismiss. Koppers filed a Motion for Reconsideration, but the district court denied that motion on March 24, 1995. As a result, Koppers brought suit against the London Insurers relating to the 1960-65 policies by adding them as defendants in the state court action against INA.

After the initial dismissal of Koppers' claims against the London Insurers pertaining to the 1960-65 policies, all of the defendant insurers except for the London Insurers settled with Koppers before trial. Thus, following the dismissal and settlement, the only remaining claims in the case were those against the London Insurers for the period from the 1940s to 1959 and 1966 to the 1970s. See Koppers, 98 F.3d at 1444.

In April-May 1995, the district court conducted a trial over Koppers' claims against the remaining defendants (the London Insurers) but the court limited the scope of that trial to policies that provided coverage from late 1953 until January 1960. The district court further limited the scope of the trial to only eighteen of the contaminated sites. Following a three week trial, the jury awarded Koppers $70 million. See id.

_____

1. During the period in question, Koppers' primary insurance carrier was Aetna which was liable for $50,000 for each occurrence. As an excess carrier, INA then became liable for $1,000,000 per occurrence. The London Insurers thus became liable for amounts in excess of $1,050,000.

4

On July 20, 1995, pursuant to Rule 54(b), the district court certified as final for interlocutory appeal the part of its judgment relating to the claims litigated at the jury trial, noted above. Although Koppers cross-appealed, it did not challenge the district court's decision to dismiss the 1960-65 policy claims against the London Insurers.

On appeal, in reversing the district court's method of apportioning liability, we commented that

> the district court would not need to determine whether the non-settling pre-1971 policies were triggered because the London Insurers concede -- against their interests -- that all of Koppers' policies up to 1971 (the date from which pollution exclusion clauses have appeared in all the policies) were triggered.

Id. at 1456. In addition, in a footnote, we suggested that INA was not a necessary party for a proper adjudication of the claims involved in this dispute:

> We recognize that some of Koppers' insurers are not part of this action because they are non-diverse with the plaintiff. Under [Gould Inc. v. Continental Gas, 585 A.2d 16 (Pa. Super. Ct. 1991)], however, these insurers need not participate in the case in order for the district court to determine their apportioned shares of liability for purposes of reducing the judgment against the London Insurers. See 585 A.2d at 19 (stating that court need only look at policies' terms and limits). Of course, any determination that these policies were triggered would not be binding or preclusive against the absent insurers in future litigation because they are not parties here. We note also that the London Insurers' interests are aligned with those of the absent insurers: each would like to prove that the absent insurers' policies were not triggered. For the London Insurers, such a determination would increase the settling insurers' shares (thereby decreasing the London Insurers' liability), and the absent insurers would naturally like to avoid a determination of liability in the first place.

Id. n.21.

5

Prompted by our intimation that INA was not an indispensable party, Koppers moved to reinstate the dismissed claims pertaining to the 1960-65 policies. Essentially, then, Koppers requested the district court to reconsider its earlier decision which had dismissed the claims pertaining to the 1960-65 policies on the grounds that INA was an indispensable party. On June 10, 1997, the district court denied this motion from the bench, ruling:

> I think that's the law of the case[.] It could have been appealed at the time the rest of this case went up and therefore, I'm going to deny the motion to reinstate any claims. I'm not going to listen to any arguments, I'm just going to just deny it.

Tr. June 10, 1997, at 2.

Thereafter, Koppers moved for certification under Rule 54(b). Complying with the requirements set forth in Allis-Chalmers Corp. v. Philadelphia Elec. Co., 521 F.2d 360 (3d Cir. 1975), the district court granted that motion on July 15, 1997, and at the same time formally denied Koppers' Motion to Reinstate the claims that had been dismissed.

III.

As a threshold matter, we must address a motion by the London Insurers urging this Court to dismiss the instant appeal for lack of appellate jurisdiction.

The London Insurers contend that the dismissal of the 1960-65 claims ("the dismissal order") becamefinal and appealable when the district court entered a final judgment over the litigated claims on July 20, 1995. The London Insurers claim that the dismissal order merged with the final judgment at that time. Thus, they argue that Koppers should have appealed the dismissal order then, and by failing to do so, Koppers waived its right to appeal that dismissal at the present time.

Koppers counters that this Court does have appellate jurisdiction as there was no appealable order concerning the dismissal of the 1960-65 policies until the district court certified this issue under Rule 54(b). Koppers points out that the appeal of the July 20, 1995 judgment concerned

6

different policies than those at issue here as the present appeal specifically addresses the dismissed claims. Furthermore, Koppers argues that as there is still no final judgment over all of the claims in the instant case, the "merger rule" does not apply.2 We agree.

Rule 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b) (emphasis added). As the Rule 54(b) certification pertaining to the July 20, 1995 order did not encompass the claims involving the 1960-65 policies, the Rule 54(b) certification did not -- indeed, could not -- implicate those claims.3 Contrary to what the London Insurers argue, there was no final order from which Koppers could have appealed. Thus, Koppers did not waive its right to appeal this issue.

_____

2. Under the "merger rule," prior interlocutory orders merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order. See In re Westinghouse Sec. Litig., 90 F.3d 696, 706 (3d Cir. 1996).

3. The July 20, 1995 order concerned only eighteen (18) sites and insurance policies providing coverage from 1953-60. See Order July 20, 1995 at 2-4.

7

The London Insurers have not brought to the Court's attention nor have we found any cases that have held that a district court could not enter a Rule 54(b) certification under delayed circumstances such as those present in this matter. Accordingly, we conclude that this Court has appellate jurisdiction over the instant matter.[4]

Accordingly, we now address the merits of the dispute at hand -- whether, in fact, INA was an indispensable party under Rule 19(b) of the Federal Rules of Civil Procedure.[5] We exercise plenary review over a district court's determination that a party's joinder is necessary under Rule 19(a). See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir. 1993). We review a district court's ruling that a party is indispensable under Rule 19(b), however, for abuse of discretion. See id. at 403.

IV.

The London Insurers contend that INA is a necessary (and indispensable) party and thus that the district court properly dismissed the claims pertaining to the 1960-65 policies. The London Insurers claim that they cannot be held liable to pay on their excess policies unless and until

_____

4. Along the same lines, the London Insurers also argue that because Koppers failed to appeal the district court's dismissal of the claims pertaining to the 1960-65 policies, Koppers did not preserve this issue and the district court's dismissal became the law of the case. This argument fails for the very reasons that we conclude that this Court has appellate jurisdiction. As the initial Rule 54(b) certification did not encompass the dismissal of the claims pertaining to the 1960-65 policies, Koppers could not have raised this issue in the prior appeal. Cf. United States v. U.S. Smelting Co., 339 U.S. 186, 198-99 (1950) (holding that the law of the case did not bar appeal despite party's failure to raise issue in a prior interlocutory appeal, although party could have raised issue in that prior appeal). Moreover, the district court's reference to "law
of the case" cannot bind this Court on appeal. See Messenger v. Anderson, 225 U.S. 436, 444 (1912).

5. In response to the London Insurers' Motion to Dismiss for lack of appellate jurisdiction, Koppers filed a Motion for Attorneys' Fees and Costs incurred in opposing that motion in this Court. Koppers has not furnished us with a basis for granting its motion for fees and costs. We will therefore deny Koppers' motion.

8

the underlying insurers -- including INA -- have paid or have been held liable to pay the full amount of their underlying policies. The London Insurers submit that their policies are "directly excess to [the INA policies] and contingent upon their liability under them," Appellee's Br. at 20, and that payment or liability under the underlying policies is a condition precedent to any obligations that the London Insurers might incur. In support, the London Insurers point to the following passage quoted from the issued policies:

> [L]iability shall attach to the Underwriters only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability . . . .

App. 343 (Policy No. 60/473/3 at 1). Thus, the London Insurers maintain that the district court could not impose liability upon them without INA being a party to the litigation at hand. The London Insurers rely upon City of Littleton v. Commercial Union Assurance Company, 133 F.R.D. 159 (D. Colo. 1990) (holding that absent primary insurers were indispensable parties when defendant excess insurers' policies were dependent upon whether the primary insurers' policies provided coverage), in support of their argument that underlying insurers are indispensable parties in cases involving excess insurers.

In response, Koppers asserts that the district court erred in determining that INA was an indispensable party under Rule 19(b) because INA is not, in fact, a necessary party under Rule 19(a). See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 405 (3d Cir. 1993) (stating that a court's determination that a party is necessary is a "necessary predicate" to its determination that a party is indispensable). Contrary to the London Insurers' position, Koppers claims that the London Insurers' policies are not contingent upon nor dependent upon INA's obligations under its insurance policies, as the London Insurers' policies do not incorporate the terms of INA's policies and do not make the London Insurers' obligations to pay contingent upon whether INA pays its claims. Indeed, Koppers argues that the plain language of the policies establishes that the London Insurers' liability is

9

independent from any liability incurred by INA. To the extent that the London Insurers assert otherwise, Koppers submits that the London Insurers improperly rely upon cover notes rather than provisions in actual policies.6

Koppers also claims that INA's policy is not an "Underlying Umbrella Policy" and is not identified as such, so that the London Insurers' obligations are not dependent upon nor contingent upon INA's policy being paid. Rather, Koppers argues that the London Insurers' policies provide coverage only in excess of what is provided by INA's policies. As a result, Koppers contends that INA is not a necessary nor an indispensable party to the instant dispute, as the London Insurers' obligations can be determined fairly and properly without INA being a party. Indeed, Koppers points to this Court's earlier observation that the district court could determine the scope of the London Insurers' liability without INA being a party to the instant litigation. See Koppers, 98 F.3d at 1456 n.21. Accordingly, Koppers argues that complete relief can be granted in INA's absence, INA will not be prejudiced by the adjudication of the present matter, and that the London Insurers run no risk of incurring multiple or inconsistent obligations as a result of INA's absence.

Subsection (a) of Rule 197 addresses the issue of whether

_____

6. Cover notes are documents that a broker issues to an insured to notify the insured that an insurance policy has been obtained as is in effect. See Decl. Michael Jackson at 3 (P 6). As the cover note is not issued by the insurers but rather by an insurance broker, "insurers in the London Market typically do not recognize a cover note as binding upon them." Id.

7. Rule 19 governs the joinder of parties. It provides:

> (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties

10

a party should be joined as a "necessary" party. See Janney, 11 F.3d at 404. Subsection (b) concerns the issue of whether a party is an "indispensable" party. In reviewing a district court's determination pursuant to Rule 19, we must first determine whether a party is a necessary party to the dispute. See id. If the party is determined to be a necessary party but cannot be joined because such joinder would defeat diversity, it must then be determined whether the absent party is an indispensable party. See id.

Rule 19(a) states that a party is necessary if either (1) the present parties will be denied complete relief in the absence of the party to be joined, or (2) the absent party will suffer some loss or be put at risk of suffering such a loss if not joined. As Rule 19(a) is stated in the disjunctive, if either subsection is satisfied, the absent party is a necessary party that should be joined if possible. Under Rule 19(a)(1), we first address whether the parties can be afforded complete relief in the absence of the non-joined party. We hold that they can.

_____

subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.
If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an

adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19 (West 1998).

11

In order to determine whether the parties can be afforded complete relief in the absence of INA, we turn to the contract provisions which governed the 1960-65 policies. Policy No. 60/473/2 is the "Umbrella Policy" upon which all of the disputed policies at issue rely to define the scope and the terms of the London Insurers coverage and liability. See Decl. Michael Jackson at 4-7. Policy No. 60/473/2 explicitly provides:

> Nothing herein shall be construed to make this policy subject to the terms, conditions, and limitations of other insurance.

App. 275 (Condition L). In addition, Policy No. 60/473/2 states:

> It is a condition of this policy that the policy or policies referred to in the attached "Schedule of Underlying Insurance" shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this policy. Failure of the Assured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Underwriters shall only be liable to the same extent as they would have been had the Assured complied with the said condition.

App. 276 (Condition S) (emphasis added). Moreover, the loss payable clause of Policy No. 60/473/2 reads, in pertinent part:

> Liability under this policy with respect to any occurrence shall not attach unless and until the Assured, or the Assured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence.

App. 274 (Condition J) (emphasis added).

Our reading of the Koppers' policies requires a total of $1,050,000 to be paid by either Koppers or its underlying insurance carrier -- in this case Aetna and INA-- before any liability of the London Insurers is triggered. Our understanding in this respect is that the London Insurers'

12

excess policy has, in effect, a $1,050,000 deductible amount before any payment must be made pursuant to the policy's terms. We thus conclude that insofar as liability under the London Policies is concerned, complete relief can be accorded to the parties present to this litigation without the joinder of INA. Accordingly, we hold that INA is not a necessary party under Rule 19(a)(1). In addition to the fact that complete relief is available, INA's ability to protect its interests will not be impaired or impeded by the disposition of the action in its absence. See Fed. R. Civ. P. 19(a)(1)(i). By the same token, under Rule 19(a)(2)(ii), the London Insurers face no risk of multiple or otherwise inconsistent obligations as a result of INA's absence from this action.

As we noted above, the Limits of Liability section of Policy No. 60/473/2 provides that liability does not attach to the London Insurers unless a claim exceeds at least $1,050,000. This provision underscores the independence between any liability that the London Insurers have under their policies and any liability that may result from INA's own policy coverage. To the extent that the London Insurers rely upon the cover notes to "stand as clear evidence of the fundamental structure" of the insurance coverage provided by the respective excess insurance policies, such reliance is misplaced.[8] Appellee's Br. at 23. By their own terms, the cover notes became void when the actual insurance policies were issued. See App. 37 ("This cover note shall be automatically terminated and voided by delivery of policy or certificate of insurance to the Assured.")

As we have concluded that INA is not a necessary party under Rule 19(a), INA cannot be an indispensable party under Rule 19(b). See Janney, 11 F.3d at 405. Accordingly, the district court erred in dismissing Koppers' claims pertaining to the 1960-65 policies for failure to join INA as an indispensable party.[9]

_____

8. We note that under Pennsylvania law, if the language of an insurance policy is ambiguous, the ambiguous language is construed against the drafter. See Board of Pub. Educ. v. National Union Fire Ins. Co., 709 A.2d 910, 1998 WL 111558, at 2 (Pa. Super. Ct. Mar. 16, 1998).

9. We have considered the following issues that the London Insurers have raised on appeal and have found them to be without merit: the risk

13

V.

In sum, as we conclude that INA is not a necessary and therefore not an indispensable party to the instant action, we will reverse the district court's dismissal of Koppers' claims relating to the 1960-65 policies and remand for further appropriate proceedings.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit
_____

of duplicative litigation over identical issues in both state and federal fora; reinstating the 1960-65 policy claims weighs against judicial economy as INA policies would have to be analyzed in both state and federal courts; the district court cannot grant complete relief because it has no jurisdiction over INA; this Court should affirm under the doctrine of Wilton v. Seven Falls, 515 U.S. 277 (1995) (holding that a discretionary standard governs a district court's decision to stay a federal declaratory judgment action during the pendency of parallel state court proceedings).

14